IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CUONG HUY DAO,<br><br>            Plaintiff,<br><br>    v.<br><br>DUSTIN CAMPBELL, et al.,<br><br>            Defendants. | No. 2:23-CV-1242-KJM-DMC-P<br><br><br><br>ORDER |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Plaintiff's fourth amended complaint, ECF No. 18.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). This provision also applies if the plaintiff was incarcerated at the time the action was initiated even if the litigant was subsequently released from custody. See Olivas v. Nevada ex rel. Dep't of Corr., 856 F.3d 1281, 1282 (9th Cir. 2017). The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply,

1  concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to

2  Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice

3  of the plaintiff's claim and the grounds upon which it rests. See Kimes v. Stone, 84 F.3d 1121,

4  1129 (9th Cir. 1996). Because Plaintiff must allege with at least some degree of particularity overt

5  acts by specific defendants which support the claims, vague and conclusory allegations fail to

6  satisfy this standard. Additionally, it is impossible for the Court to conduct the screening required

7  by law when the allegations are vague and conclusory.

## I.  BACKGROUND

### A.  Procedural History

Plaintiff initiated this action with a pro se complaint filed on June 28, 2023. See ECF No. 1. On July 14, 2023, before the Court could address the sufficiency of Plaintiff's complaint, Plaintiff filed a first amended complaint as of right. See ECF No. 9. On May 20, 2024, the Court issued an order addressing the sufficiency of the first amended complaint. See ECF No. 13. In dismissing the first amended complaint with leave to amend, the Court stated as follows:

> . . . Prior to screening of the original complaint, Plaintiff filed the pending first amended complaint as of right on July 14, 2023. See ECF No. 9.  This pleading is 182 pages long, consisting entirely of Plaintiff's hand-written allegations. See id. Plaintiff now names 201 individual defendants. See id. at 2-9.  A number of these defendants are alleged to be prison officials at Salinas Valley State Prison. See id.  It thus appears that Plaintiff's claims now include allegations related to events at three separate prisons – California State Prison – Sacramento, Pelican Bay State Prison, and Salinas Valley State Prison.  Finally, Plaintiff's first amended complaint appears to be incomplete in that the first page of the pleading is page 5 of this Court's form civil rights complaint for state prisoners. See id. at 1. Not included with the filing are pages 1-4 of the form complaint and, as a result, a number of key allegations, such as those related to jurisdiction and exhaustion of administrative remedies, are not contained within the current operative pleading.

ECF No. 13, pg. 2.

Plaintiff filed his second amended complaint on June 17, 2024. See ECF No. 14. On August 29, 2024, the Court directed the Plaintiff to leave and amend the second amended complaint. See ECF No. 15.  Plaintiff then filed a third amended complaint on September 30, 2024. See ECF No. 15. On February 07, 2025, the Court addressed the sufficiency of the third

amended complaint and found that the second amended complaint was incomplete. The Court provided Plaintiff with leave to amend. See ECF No. 17. Plaintiff has now filed his fourth amended complaint. See ECF No. 18.

### B.  **Plaintiff's Allegations**

Plaintiff names the following as Defendants: (1) Dustin Campbell; (2) Carlos Rios; (3) T. Karschner; (4) J. Mayhew; (5) J. Nguyen; (6) D. Hillion; (7) C. Davis; (8) Mascadri; (9) P. Archie; (10) C. Strickland; (11) Yakshim; (12) Kukrall; (13) T. Jones; (14) Abourribya; (15) Tiemple; (16) C. Darling; (17) G. Stuhr; (18) G. Smith; (19) V. Vitali; (20) J. Anderson; (21) J. Seigelmayer; (22) A. Konrad; and (23) J. Lynch. See id. at 1-7. Plaintiff contends that he suffered cruel and unusual punishment because Defendants "maliciously and excessively weaponized" the facility provided food by poisoning and tampering with Plaintiff's food before serving it to Plaintiff. See id. at 9 and 13. According to Plaintiff, this resulted in Plaintiff being emaciated as he went from weighing 200 pounds to weighing 160-170 pounds. See id. at 9 and 14. Plaintiff contends these actions were taken in retaliation for Plaintiff reporting "misconducts" and with the intent to kill Plaintiff. Id. at 13. Plaintiff claims that on July 16, 2020, non-party "outside agency investigators" interviewed Plaintiff about this conduct. Id. Plaintiff asserts that, though he assumed this investigation would cause the conduct to stop, "it only escalated," and Plaintiff continued to be "deliberately" served poisoned food. Id. Plaintiff contends that when he would eat the food, it would result in symptoms such as headache, dizziness, muscle spasm, digestive issues, chest pain, a drug high effect, seizure-like symptoms such as shocks to the brain, tooth and gum pain, kidney pain, concussion like symptoms, and, at time, it caused Plaintiff to go unconscious or become "unnatural[ly] sleepy." Id. Plaintiff states that these symptoms would last "4 to 8 hours, days, and weeks." Id.

According to Plaintiff, he "caught" Defendants Archie and Rios, along with other staff, opening the plastic lid from his food tray "to poison [Plaintiff's] food." Id. at 14. Plaintiff asserts that Defendants took measures to "evade" these actions being captured on camera. Id. Additionally, Plaintiff asserts that "officers told me to accept it or don't eat it, they don't care." Id. Plaintiff contends that the health care staff, who are not individually named in the complaint,

1  were aware that officers were tampering with food and serving tampered food to Plaintiff
2  however, Plaintiff states that he is unsure if the health care staff participated in the poisoning
3  itself. See id. at 15.
4         Plaintiff asserts that, due to his state supplied food being poisoned, he can only eat
5  the food he purchases from the canteen. Id. at 14. However, Plaintiff contends that Defendants
6  Rios and Campbell "illegally" took away Plaintiff's canteen privileges as a punishment. Id.
7  Plaintiff feels his only options are to eat the poisoned food "or die, either way they [were] killing
8  me slowly." Id. Plaintiff claims that this poisoning has occurred "at every prison" Plaintiff was
9  transferred to. Id. at 15. Plaintiff contends that the poisoning of his food was cruel and unusual
10 punishment "because [Defendants] were deliberately indifferent to my reasonable safety." Id.
11 Further, Plaintiff asserts he would not need to pursue this action had the "ranking staff [taken]
12 leadership action to lawfully stop the poisoning." Id.
13        Plaintiff asserts that on September 7, 2020, he filed a report citing twenty-one
14 instances where his food was poisoned and tampered with maliciously over the period of thirty
15 days by Defendants Archie, Davis, Mayhew, Karschner, Mascadri, Hillion, Nguyen, Rios,
16 Strickland, Yakshim, and Campbell. See id. at 14-18. Plaintiff alleges that the food he consumed
17 was poisoned in an attempt to hurt and kill him and that each time after consuming the tampered
18 food, Plaintiff felt the intended adverse effects. See id. at 14-20.
19        Plaintiff alleges that on September 25, 2020, Defendant Anderson conducted a
20 hearing and illegally restricted Plaintiff's canteen privileges. See id. at 19. Plaintiff asserts that on
21 October 15, 2020, his canteen delivery was withheld by Defendants Rios and Campbell "because
22 of" Defendant Anderson. Id. Plaintiff characterizes Defendant Anderson's actions as "deliberate
23 indifference" because, according to Plaintiff, Defendant Anderson had a file on Plaintiff with
24 records of Plaintiff's complaints and daily activities. Id. Plaintiff contends that, because he had
25 that file, Defendant Anderson was aware that the correctional officers and other defendants had
26 been attempting to poison and starve him. See id. Plaintiff further contends that Defendants
27 Darling, Stuhr, Vitali, Smith, Konrad, and Lynch knew of Plaintiff's allegations because Plaintiff
28 filed grievances about them. See id.

4

Plaintiff asserts that on December 13, 2020, Defendant Strickland told another inmate that he had orders from superiors to cause Plaintiff harm with poisoned food. See id. Additionally, Plaintiff asserts Defendant Strickland gave Plaintiff hair clippers "infected with" Covid-19 and moved Plaintiff to a new housing section with inmates who had Covid-19 in an attempt to give Plaintiff Covid-19 and try to kill him. See id. at 20. Plaintiff asserts he was sick for about four months as a result of using the infected hair clippers given to him. See id. Plaintiff contends that another inmate witnessed this and "participated with the [Defendants] to poison my meals too." Id. Plaintiff alleges that medical staff merely "shine[d] a flash light into [Plaintiff's] nose and claim[ed] she didn't see anything wrong and that was all the medial care [Plaintiff] received." Id. Additionally, Plaintiff states that Defendant Lynch "lied when he claimed that [Defendant] Strickland did not give [Plaintiff] the infected clippers." Id.

Plaintiff asserts that he was served poisoned food on December 13, 2020, by Defendant Strickland and on December 15, 2020, by Defendants Davis and Archie. See id. Plaintiff contends that on December 16, 2020, Defendant Davis gave Plaintiff a meal and "was visibly shaken with anger over an alleged gassing incident and aggressively screamed at Plaintiff three times that [Defendant Davis] was going to kill [Plaintiff]." See id. Plaintiff claims that Defendant Archie was a witness to this incident. See id.

From December 17, 2020, until December 29, 2020, Plaintiff alleges that he requested his meals be brought by other staff members who would not tamper with his food and that request was denied. See id. at 21-24. Plaintiff alleges that as a result, Defendants Archie, Kukrall, Davis, Jones, Karschner, and Strickland had on one or more of these occasions illegally withheld the meal in order to deprive the Plaintiff of food as a punishment. See id. at 21-24.

Plaintiff next alleges that during a shower service on January 1, 2021, Defendant Archie verbally threatened to harm Plaintiff as a result of Plaintiff filing staff complaints and the "alleged gassing incident." See id. at 23. Plaintiff asserts that he exhausted this claim and filed a grievance about it. See id.

///

///

5

|   |   |
|---|---|
| 1 | Next, Plaintiff alleges that on February 1, 2021, Defendants Campbell and Tiemple, along with individuals not named as Defendants, acted unreasonably and unlawfully by admitting Plaintiff to crisis-bed custody for ten days. See id. at 26. Plaintiff alleges that on February 12, 2021, Plaintiff spoke with Defendant Darling about Plaintiff's allegations of his food being poisoned and Defendant Darling denied any action by the correctional officers. See id. |

According to Plaintiff, on February 13, 2021, Defendant Archie and his "co-staff" were agitated about Plaintiff's remarks to Defendant Darling the day before. See id. at 26. Plaintiff contends that Defendant Archie therefore attempted to assault the Plaintiff and attempted to make Plaintiff submit to a "cuff up." See id. Plaintiff next asserts that from February 13, 2021, until February 24, 2021, on four different occasions, Plaintiff was given poisoned food, which he consumed and such consumption resulted in a "drugged adverse effect" on Plaintiff. See id. at 26-28. According to Plaintiff, he pursued grievances to report these issues to a third appeal on August 1, 2021. See id. at 27. Plaintiff contends that at the third appeal, Chief Moseley found that Defendants Rios and Campell "did wantonly tampered (sic) with my state meal rights before they serviced it to me to eat." Id. at 27-28.

Plaintiff asserts that on February 26, 2021, Defendant Seigelmayer held a Rules Violation Report (RVR) hearing about the "gassing incident" and Plaintiff lost 90 days of canteen privileges "as punishment." Id. at 28. Plaintiff contends that the conduct he was cited for did not violate any CDCR policies or rules and Plaintiff concludes this 90-day restriction amounts to cruel and unusual punishment. Id. Plaintiff alleges that Defendant Karschner asked Plaintiff if he wanted to attend the February 26, 2021, RVR hearing but Plaintiff declined. Id. at 29. Plaintiff further alleges that Defendants Rios, Campbell, Karschner, and Seigelmayer all "subjected [Plaintiff] to the hungers games they play with me." Id. at 29.

Plaintiff contends that Defendants Lynch, Smith, Darling, Stuhr, Vitali, and Konrad were notified of Plaintiff's claims by way of grievances about Plaintiff's food being poisoned. See id. at 24-25 and 29-30. Plaintiff asserts that those defendants are therefore responsible for the harm that has been inflicted onto Plaintiff because those defendants did not take the grievance reports into consideration. See id. Plaintiff asserts such failure was deliberate

indifference and violated Plaintiff's Eighth Amendment rights. See id. at 24-28.

## II.  DISCUSSION

The Court finds that the fourth amended complaint states cognizable claims against Defendants Rios, Campbell, Karschner, Mayhew, Nguyen, Hillion, Davis, Mascadri, Archie, Strickland, Yakshim, Kukrall, and Jones based on Plaintiff's Eighth Amendment claims of repeated instances of providing Plaintiff with contaminated food, refusing to allow other staff to provide uncontaminated meals, and/or withholding meals. The Court also finds that the fourth amended complaint states cognizable claims of supervisory liability as to Defendants Darling, Stuhr, Smith, Vitali, Konrad, Anderson, and Lynch for their actions and omissions related to the food provided/not provided to Plaintiff. The Court further finds that there is a cognizable Eighth Amendment claim of deliberate indifference to safety against Defendant Strickland for allegedly giving Plaintiff hair clippers infected with Covid-19 and housing Plaintiff with an inmate who was infected with Covid-19. The Court is prepared to direct service of the fourth amended complaint on these defendants.

Plaintiff has not stated any cognizable claims against Defendants Abourribya, Tiemple, and Seigelmayer. It is the undersigned's conclusion that the claims against these defendants be dismissed.

Plaintiff will be provided an opportunity to amend should he wish to continue to pursue to amend his complaint for the following claims stated below that are not cognizable but susceptible to further amendment. If no fifth amended complaint is filed within the time provided, the Court will direct service of the fourth amended complaint on Defendants Rios, Campbell, Karschner, Mayhew, Nguyen, Hillion, Davis, Mascadri, Archie, Strickland, Yakshim, Kukrall, Jones, Darling, Stuhr, Smith, Vitali, Konrad, Anderson, and Lynch.

/ / /

/ / /

/ / /

/ / /

### A. **Denial of Canteen Privileges**

Plaintiff claims that Defendants violated Plaintiff's rights by denying him canteen privileged for 90 days. Prisoners, however, possess no constitutional right to canteen privileges. See Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996) (affirming dismissal of § 1983 claim for denial of prison canteen products because "[t]here is no constitutional right to such items"); see also Rahman X v. Morgan, 300 F.3d 970, 973-74 (8th Cir. 2002). The Court addressed this claim when it was presented in Plaintiff's previous pleadings. Canteen privileges are not a constitutional right and therefore the undersigned finds that this claim should be dismissed with no further leave to amend.

### B. **Harassment Claim**

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Allegations of name-calling, verbal abuse, or threats generally are also not unusually gross for a prison setting. See Carpenter v. Molina, 2021 WL 2226635, at *3 (E.D. Cal. June 2, 2021). Thus, a defendant's threats to kill or harm a plaintiff are insufficient, without more, to give rise to a cognizable verbal harassment claim. See Bailey v. Soto, 2019 WL 4452970, at *7-9 (C.D. Cal. July 10, 2019). However, "[a] threat of deadly force made merely to inflict gratuitous fear and punishment when the party has both the opportunity to carry out the threat and evidences the intent to do so does state a cognizable claim under the Eighth Amendment." Oliver v. Noll, 2012 WL 2055033, at *2 (N.D. Cal. June 5, 2012) (citing Northington v. Jackson, 973 F.2d 1518, 1523 (10th Cir. 1992) (pointing gun at inmate's head and threatening to shoot amounts to cognizable Eighth Amendment claim; and Burton v. Livingston, 791 F.2d 97, 100 (8th Cir. 1986) (drawing gun and terrorizing prisoner with threats of death while using racially offensive language states first amendment, due

process and equal protection claims)).

Here, Plaintiff alleges that when Defendant Davis was giving Plaintiff a meal, he stated that he was going to kill the Plaintiff. However, Plaintiff does not allege that Defendant Davis took any action to show that he was going to carry out the threat. As is noted above, threats to kill or harm a plaintiff without opportunity and evidence of intent to do so are not sufficient and, therefore, the undersigned orders that Plaintiff be allowed to amend this non-cognizable claim.

### C. Excessive Force Claim

When prison officials stand accused of using excessive force, the core judicial inquiry is ". . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992); Whitley v. Albers, 475 U.S. 312, 320-21 (1986). The "malicious and sadistic" standard, as opposed to the "deliberate indifference" standard applicable to most Eighth Amendment claims, is applied to excessive force claims because prison officials generally do not have time to reflect on their actions in the face of risk of injury to inmates or prison employees. See Whitley, 475 U.S. at 320-21. In determining whether force was excessive, the court considers the following factors: (1) the need for application of force; (2) the extent of injuries; (3) the relationship between the need for force and the amount of force used; (4) the nature of the threat reasonably perceived by prison officers; and (5) efforts made to temper the severity of a forceful response. See Hudson, 503 U.S. at 7. The absence of an emergency situation is probative of whether force was applied maliciously or sadistically.

Plaintiff alleges that Defendant Archie and co-staff attempted to assault Plaintiff and make Plaintiff submit to a cuff-up. Plaintiff does not provide allegations indicating an emergency situation, any injuries sustained, or the nature of the force used. Plaintiff did not provide enough factual detail about the situation and therefore, the undersigned orders that Plaintiff be allowed leave to amend this claim in an amended complaint.

///

///

D. **Crisis Bed Custody Claim**

Prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). Prison officials have a duty to take reasonable steps to protect inmates from safety risks. See Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982); Farmer, 511 U.S. at 833.

"Mental health crisis beds (MHCBs) are for inmates who are suffering '[M]arked Impairment and Dysfunction in most areas ... requiring 24–hour nursing care' and/or dangerous to others as a result of a serious mental illness or to themselves for any reason. Revised Program Guide, 2009 Revision, 12–1–8. They are also used for 'short-term inpatient care for seriously mentally disordered inmate-patients awaiting transfer to a hospital program or being stabilized on medication prior to transfer to a less restrictive level of care.'" Coleman v. Brown, 938 F. Supp. 2d 955, 982–83 (E.D. Cal. 2013)

Plaintiff makes vague and conclusory statements that Defendants unlawfully and unreasonably admitted Plaintiff to crisis-bed custody for ten days. Plaintiff does not provide any supporting facts that prison officials were unreasonably or unlawfully providing him medical care for his personal safety. It is unclear what claim Plaintiff seeks to assert arising from the crisis bed custody incident. Plaintiff asserts no facts to its unreasonableness or unlawfulness. As a result, it is the undersigned's conclusion that this claim be dismissed with no further leave to amend.

E. **Retaliation Claim**

In order to state a claim under 42 U.S.C. § 1983 for retaliation, the plaintiff must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also

Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005). Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose. See Rhodes, 408 F.3d at 568.

Here, Plaintiff claims that the alleged violation of tampering with his food with poison was done so in retaliation for Plaintiff reporting Defendants' misconduct and intent to kill Plaintiff. Retaliation claims require that the plaintiff's First Amendment rights be "chilled." Plaintiff does not in this case provide facts to suggest that his rights were chilled. As a result, it is the undersigned's conclusion that Plaintiff be allowed to amend the retaliation claims in an amended complaint.

### III. CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, Plaintiff is entitled to leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Therefore, if Plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make Plaintiff's amended complaint complete. See Local Rule 220. An amended complaint must be complete in itself without reference to any prior pleading. See id.

If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation. See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

/ / /

/ / /

1         Because the complaint appears to otherwise state cognizable claims, if no amended
2 complaint is filed within the time allowed therefor, the Court will issue findings and
3 recommendations that the claims identified herein as defective be dismissed, as well as such
4 further orders as are necessary for service of process as to the cognizable claims.
5         Accordingly, IT IS HEREBY ORDERED that Plaintiff may file a fifth amended
6 complaint within 30 days of the date of service of this order.

8 Dated: November 26, 2025

                                              DENNIS M. COTA
                                              UNITED STATES MAGISTRATE JUDGE